Ronald I. Raether, Bar No. 303118
ron.raether@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Jessica Lohr, Bar No. 302348
jessica.lohr@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092
Telephone: 858.509.6000
Facsimile: 858.509.6040

Attorneys for Defendant
ACCURATE BACKGROUND, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MIGUEL LERMA, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES, LLC,<br>AMAZON LOGISTICS, INC.,<br>ACCURATE BACKGROUND, LLC,<br>and DOES 1 to 5,<br><br>Defendants. | Case No. 8:22-CV-01727-FWS-JDE<br><br>Honorable Fred W. Slaughter<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ACCURATE BACKGROUND LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:    February 16, 2023<br>Time:    10:00 a.m.<br>Place:    Courtroom 10D |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ....................................................................................... 1

II.  RELEVANT FACTUAL ALLEGATIONS ............................................... 3

III.  LEGAL STANDARD ................................................................................ 6

IV.  ARGUMENT ............................................................................................ 7

   A.  The Court Should Dismiss Plaintiff's Megan's Law Claim. ......................... 7

     1.  Plaintiff Does Not Plausibly Allege Accurate Obtained or Reported Any Information from the Megan's Law Website. ............................................. 7

     2.  Megan's Law Only Provides for Potential Liability Against the "User" of the Information ..................................................................................... 10

     3.  Plaintiff Does Not Plausibly Allege that Accurate Was an Agent of Amazon. ............................................................................................... 12

   B.  Plaintiff's ICRAA Claim Must Be Dismissed. ............................................. 13

     1.  Plaintiff's Conviction Was Reportable Under the ICRAA Because He Was Released from Prison Within Seven Years of the Date of the Background Report. .................................................................................. 14

     2.  Plaintiff's ICRAA Claim Should Be Dismissed Because It Is Preempted by § 1681t of the FCRA ......................................................................... 16

   C.  Plaintiff's FCRA Claim Fails Because It Does Not Allege Facts Supporting Required Elements and Because It Is Entirely Predicated on the Alleged Megan's Law Violation .......................................................................... 20

   D.  Plaintiff's UCL Claim Fails Because It Is Predicated on the Other Deficient Statutory Claims and Because Plaintiff Lacks Standing ................................ 21

V.  CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbink v. Experian Info. Sols., Inc.*, No. 19-CV-1257, 2019 WL
6838705 (C.D. Cal. Sept. 20, 2019) ...................................................... 21

*Akins v. Seterus, Inc.*, No. 16-CV-01656, 2019 WL 4243221 (E.D. Cal.
Sept. 6, 2019) .......................................................................................... 12

*Aldaco v. RentGrow, Inc.* (7th Cir. 2019) 921 F.3d 685 ............................ 17

*Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176 (Cal. Ct. App. 2012) ............... 22

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th
923 (Cal. Ct. App. 2018) ........................................................................ 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 6

*Cisneros v. U.D. Registry, Inc.*, 39 Cal.App.4th 548 (Cal. Ct. App.
1995) ........................................................................................................ 23

*Consumer Data Indus. Ass'n v. Frey*, 495 F.Supp.3d 10 (D. Me. 2020) ................. 18

*Estrada v. Kaiser Foundation Hospitals*, 678 Fed.Appx. 494 (9th Cir.
2017) ........................................................................................................ 22

*Friends of the Eel River v. North Coast Railroad Authority*, 3 Cal.5th
677 (Cal. 2017) ....................................................................................... 16

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal.
App. 4th 937 (2007) ............................................................................... 13

*In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ...................... 6

*Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443 (9th Cir. 2018) ............. 13

*Juster v. Workday, Inc.*, No. 21-CV-07555, 2022 WL 3030530 (N.D.
Cal. Aug. 1, 2022) .................................................................................. 20

*Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916 (9th Cir. 2008) .............. 6

*Marchioli v. Pre-employ.com, Inc.*, No. 16-CV-2305, 2017 WL
7049527 (C.D. Cal. June 30, 2017) ....................................................... 20

*McGroarty v. Am. Background Info. Servs.*, No. 08-CV-1360, 2009
    WL 980417 (C.D. Cal. Apr. 8, 2009)....................................................10, 11, 12

*McKenna v. WhisperText*, No. 14-CV-00424, 2015 WL 5264750 (N.D.
    Cal. Sept. 9, 2015) ...............................................................................................3

*Mendoza v. ADP Screening & Selection Servs., Inc.*, 182 Cal. App. 4th
    1644 (Cal. Ct. App. 2010) ..................................................................10, 11, 12

*People ex rel. Harris v. Aguayo*, 11 Cal.App.5th 1150 (Cal. Ct. App.
    2017)....................................................................................................................22

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal.App.4th
    102 (Cal. Ct. App. 2003) ....................................................................................23

*People v. Coronado*, 12 Cal.4th 145 (Cal. 1995) .....................................................15

*People v. Toomey*, 157 Cal.App.3d 1 (Cal Ct. App. 1985) .......................................23

*Roberts v. United Healthcare Services, Inc.*, 2 Cal.App.5th 132 (Cal
    Ct. App. 2016) ....................................................................................................16

*Ryabyshchuk v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236, 2011 WL
    5976239 (S.D. Cal. Nov. 28, 2011).....................................................................3

*Santos v. Crenshaw Mfg., Inc.* 55 Cal.App.5th 39 (Cal. St. App. 2020) ................15

*Simon v. DIRECTV, Inc.* (D. Colo. Mar. 19, 2010) No. 09-CV-00852,
    2010 WL 1452853 .......................................................................................17, 18

*Somers v. Apple Inc.*, 729 F.3d 953 (9th Cir. 2013)...................................................6

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)...........................6

*In re Tobacco Cases II*, 240 Cal.App.4th 779 (Cal. Ct. App. 2015).......................22

*Van't Rood v. Cty. of Santa Clara*, 113 Cal. App. 4th 549 (Cal. Ct.
    App. 2003) ...........................................................................................................13

*Vignolo v. Miller*, 120 F.3d 1075 (9th Cir. 1999)......................................................6

*Walker v. USAA Cas. Ins. Co.*, 474 F.Supp.2d 1168 (E.D. Cal. 2007) ..................22

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003)...................6

*Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263 (5th Cir. 2000)......................21

**STATUTES**

*15 U.S.C. § 1681a(d)(1)* ...............................................19

*15 U.S.C. § 1681b(b)(1)* ................................................1, 20

*15 U.S.C. § 1681c(a)(2), (5), (7)* ........................................17, 18

*15 U.S.C. § 1681e(a)* ...................................................21

*15 U.S.C. § 1681t(a)* ...................................................17

*15 U.S.C. § 1681t(b)* ..............................................16, 17, 18, 19

*Cal. Bus. & Prof. Code § 17200* ..............................1, 2, 21, 22, 23

*Cal. Civ. Code § 1786* ..................................................19

*Cal. Civ. Code § 1786.18(a)(7)* ......................1, 2, 14, 16, 17, 18, 19, 20

*Cal. Pen. Code § 290.46* ....................1, 2, 4, 5, 7, 8, 9, 10, 11, 12, 21, 22

## I.     INTRODUCTION

Miguel Lerma, Jr. ("Plaintiff") asserts four claims against Accurate Background, LLC ("Accurate") pursuant to: California's Megan's Law ("Megan's Law"), Cal. Pen. Code § 290.46; California's Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code § 1786.18(a)(7); the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(1); and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

Plaintiff claims that, in March 2022, he applied for a job with co-Defendants Amazon Logistics Services., Inc and/or Amazon.com Services, LLC (collectively "Amazon").  He alleges Amazon denied his application based on a March 2022 background report that Accurate prepared (the "Background Report"), which included a 2013 conviction for two counts of felony rape.  Plaintiff does not dispute that the criminal record belongs to him, that he was sentenced to jail for six years, or that he was released from prison and placed onto parole in May 2016.

Plaintiff instead bases each of his claims against Accurate on two theories.  First, Plaintiff alleges that in preparing the Background Report, Accurate obtained and reported conviction information from California's Megan's Law sex offender registry website.  Second, Plaintiff alleges that his criminal history was not reportable under the ICRAA because the conviction date was more than seven years before the date of the Background Report.  Both theories are simply incorrect.  Plaintiff's claims against Accurate are baseless.

As an initial matter, **Accurate did not report any information from the Megan's Law website on the Background Report**.  Instead, the Background Report included Plaintiff's criminal conviction information from the Orange County Superior Court, not the Megan's Law website.  This is readily apparent from the underlying Background Report itself, the Orange County Superior Court records, and the information publicly available through the Megan's Law website.  Accordingly, Plaintiff's Megan's Law and FCRA claims fail as a matter of law because they are

premised on Accurate including information from the Megan's Law website on the Background Report, which did not happen.

Further, Plaintiff's Megan's Law claim against Accurate fails for an entirely independent reason. Plaintiff cannot assert this claim against a consumer reporting agency ("CRA") like Accurate. In fact, multiple California courts have explicitly held that Megan's Law claims like Plaintiff's cannot survive against CRAs. Plaintiff's conclusory allegations regarding agency do not save this claim.

As to Plaintiff's ICRAA claim, it fails for two reasons. First, the ICRAA explicitly permits a CRA to report criminal records for seven years after the date an offender is released from prison.[1] Here, Plaintiff was released from prison and placed on parole in May 2016, which was less than seven years before the March 2022 Background Report. Thus, his conviction was reportable under California law. Second, the ICRAA claim is preempted by the FCRA, which regulates the precise conduct at issue in the FAC, but does not contain any limitation regarding how long a criminal conviction can be reported. In other words, the FCRA governs the type of report at issue in this case, and specifically allows the reporting of criminal convictions that the ICRAA might otherwise restrict as time barred. The FCRA includes an express preemption provision, which preempts Plaintiff's ICRAA claim.

Last, Plaintiff's UCL claim is predicated on the underlying statutory violations referenced above, which all fail. Plaintiff also lacks standing to assert the UCL claim. As a result, the Court should dismiss the UCL claim.

For each of these reasons, Plaintiff's claims against Accurate fail. The Court should dismiss Plaintiff's claims against Accurate, with prejudice and without leave to amend.

---

[1] The ICRAA actually permits reporting for a longer period of time, which is measured from the end of an offender's parole period. But the Court need not assess the end of parole for purposes of this motion because the Background Report was within seven years of Plaintiff's release from prison.

## II.    RELEVANT FACTUAL ALLEGATIONS

In 2011, Plaintiff was arrested and charged with committing sexual offenses. (FAC, Dkt. No. 20 at ¶ 12.)  In 2013, Plaintiff was convicted in the Orange County Superior Court on two counts of felony rape: "RAPE DURESS MENACE" and "RAPE BY USE OF DRUGS."  (*Id.* at ¶¶ 12, 25.)  Plaintiff was incarcerated for this crime for approximately five years and was released from prison and placed on parole in May 2016.  (*See* Compl., Dkt. No. 1 at ¶ 12.)[2]

Plaintiff alleges that in March 2022, he "applied to be a store associate with Amazon at its Amazon Fresh store in Mission Viejo."  (FAC, Dkt. No. 20 at ¶ 22.) He states, "Amazon offered Plaintiff the job contingent upon Plaintiff passing a background check."  (*Id.* at ¶ 23.)

Plaintiff alleges "[o]n or about March 22, Accurate Background generated a background report on Plaintiff."  (*Id.* at ¶ 24.)  The Background Report contained the 2013 conviction for two counts of felony rape from Orange County, California:

---

[2] Plaintiff's release date comes from his initial Complaint.  Per the local rules, Accurate met and conferred with Plaintiff's counsel to inform Plaintiff that Accurate would be filing a motion to dismiss the initial Complaint.  During this discussion, Accurate informed Plaintiff that the motion to dismiss would include an argument that Accurate's reporting was timely based on Plaintiff's release date.

In response, Plaintiff amended the complaint by removing the allegation of Plaintiff's release date.  There is no reason for Plaintiff to remove this date other than to try to artificially avoid a motion to dismiss.  This strategy should not work, as the Court should consider allegations from the initial Complaint that are not disputed. *See McKenna v. WhisperText*, No. 14-CV-00424, 2015 WL 5264750, at *3 n. 32 (N.D. Cal. Sept. 9, 2015) (a court "can utilize allegations in prior versions of the complaint to judge the plausibility of the allegations in the amended complaint") (quoting *Ryabyshchuk v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236, 2011 WL 5976239 (S.D. Cal. Nov. 28, 2011)).

1
2
3
4
5
6
7



8
9
10
11
12
13
14
15
16
17
18
19
20
21



22 *See* Ex. A. at pp. 3-4.

23        Likewise, the face of the Background Report shows that it did not contain any

24 information from the Megan's Law website or the "National Sex Offender

25 Database."  *See id.*, generally and at pp. 2-3 and 6-7.  Instead, the only criminal

26 information included in the Background Report was from the Orange County, CA

27 "County Criminal" search:

28

| SEARCHES | EXPAND ALL |
|---|---|
| SSN TRACE & ADDRESS HISTORY | COMPLETED |
| COUNTY CRIMINAL - ORANGE COUNTY, CA | RECORD FOUND |
| COUNTY CRIMINAL - LOS ANGELES COUNTY, CA | NO RECORD FOUND |
| COUNTY CRIMINAL - OTERO COUNTY, NM | NO RECORD FOUND |
| COUNTY CRIMINAL - PINAL COUNTY, AZ | NO RECORD FOUND |
| FEDERAL CRIMINAL - CENTRAL DISTRICT | NO RECORD FOUND |
| FEDERAL CRIMINAL - DISTRICT OF NEW MEXICO | NO RECORD FOUND |
| FEDERAL CRIMINAL - DISTRICT OF ARIZONA | NO RECORD FOUND |
| ELECTRONIC SUBJECT NOTIFICATION | PENDING |
| NATIONAL CRIMINAL DATABASE SEARCH | COMPLETED |
| GLOBAL WATCH | NO RECORD FOUND |
| NATIONAL SEX OFFENDER DATABASE SEARCH | NO RECORD FOUND |

*Id.* at pp. 2-3.

Nevertheless, Plaintiff alleges the conviction information was "obtained from the Megan's Law website." (FAC, Dkt. No. 20 at ¶ 29.)  The only apparent support for this allegation is that Accurate states, generally, on its website that it offers a criminal background check product, which may include a "Sex Offender Registry Search." (*Id.* at ¶ 24.).  This statement on the website, however, is certainly not specific to Plaintiff's Background Report.

Plaintiff claims that Amazon decided not to hire him based on the conviction information included in the Background Report.  (*Id.* at ¶ 29.)

Plaintiff also claims that Accurate should be deemed an "agent and/or fiduciary representative" of Amazon based solely on the allegation that Accurate emailed Plaintiff pre-adverse and post-adverse action notices "as an agent and at the direction of Amazon." (*Id.* at ¶¶ 25, 27.)  Plaintiff states, in conclusory fashion, that Accurate "used" the information in the report it prepared to make an employment decision, by virtue of being an "agent" and/or "fiduciary representative for Amazon." (*Id.* at ¶¶ 29, 53.)

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure allow a defendant to move for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is warranted if the complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Thus, dismissal is "proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.  *Somers v. Apple Inc.*, 729 F.3d 953 (9th Cir. 2013).

In reviewing a complaint under Rule 12(b)(6), allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1056–57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Similarly, courts are not "required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir.), opinion amended in other respects on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).  Legal conclusions also need not be accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

## IV.   ARGUMENT

### A.   The Court Should Dismiss Plaintiff's Megan's Law Claim.

Megan's Law requires the California Department of Justice ("DOJ") to make information publicly available regarding persons who are registered sex offenders.  Specifically, the DOJ is required to post this information on the Megan's Law website and update it on an ongoing basis.  The statute states that the "**use of any information** that is disclosed pursuant to this section for purposes relating to … [employment] is prohibited."  Cal. Pen. Code § 290.46(j)(2) (emphasis added).

Plaintiff's Megan's Law claim against Accurate fails for three independent reasons: (1) Accurate did not obtain or report any information from the Megan's Law website in connection with the Background Report; (2) the statute does not impose liability on a CRA preparing a background report and instead, only applies to the user of the information, here—the prospective employer; and (3) Plaintiff's agency allegations do not otherwise save his claim.

### 1.   Plaintiff Does Not Plausibly Allege Accurate Obtained or Reported Any Information from the Megan's Law Website.

To assert a Megan's Law claim, Plaintiff must first establish that information disclosed on the Megan's Law website was used in connection with a prohibited purpose – here, employment.  Cal. Pen. Code § 290.46(j)(2).  Plaintiff's Megan's Law claim fails because Accurate did not obtain or report any information from the Megan's Law website in connection with the Background Report.  Although Plaintiff makes conclusory allegations based on marketing materials from Accurate's website, the text of the Background Report itself, the allegations in the FAC, and judicially noticeable records make clear that Plaintiff cannot plausibly state a claim.

To begin, the face of the Background Report shows that Accurate did not make *any* reference to Plaintiff's registration on California's sex offender registry in the Background Report, did not report any sex offender registry information in the Background Report, and the source of the conviction information in the Background

Report was the Orange County Superior Court.  *See* Ex. A, generally and at pp. 2-3 and 6-7.  As described above, the conviction information on the Background Report originated from the Orange County, CA "County Criminal" search.  *Id.* at pp. 2-4. And, under the relevant section of the Background Report entitled "NATIONAL SEX OFFENDER DATABASE SEARCH," Accurate reported, "NO RECORD FOUND."  *Id.* at pp. 3, 7-8.  There are no other sections of the Background Report that reference sex offender record information in any way.  *See id.*, generally.

Moreover, a comparison between: (1) the language in the FAC and; (2) the publicly available information in the Orange County Superior Court records and; (3) the Megan's Law website, confirms this point.  Specifically, the conviction information in the Background Report included: the case number [11WF0759], the filing date [04/04/2011], the charge descriptions ["RAPE DURESS MENACE" and "RAPE BY USE OF DRUGS"], the charge levels [felony], the dispositions [guilty], the disposition date for the counts [01/08/2013], and the sentencing summary [6 years in prison].  *Id.* at pp. 3-4; *see also* (FAC, Dkt. No. 20 at ¶¶ 25, 27).  This information is **identical** to the publicly available information from the Orange County Superior Court regarding Plaintiff's conviction history:

**Counts:**

| Seq | S/A | Violation Date | Section Statute | OL | Violation | Plea | Plea Date | Disposition | Disposition Date |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 0 | 11/14/2010 | 261(a)(2) PC | F | Rape; duress; menace | GUILTY | 01/08/2013 | Pled Guilty | 01/08/2013 |
| 2 | 0 | 11/14/2010 | 286(c)(2) PC | F | Sodomy by means of force | NOT GUILTY | 04/13/2012 | Dismissed | 01/08/2013 |
| 3 | 0 | 11/14/2010 | 288A(c)(2) PC | F | Oral copulation; force or injury | NOT GUILTY | 04/13/2012 | Dismissed | 01/08/2013 |
| 4 | 0 | 09/10/2009 | 261(a)(3) PC | F | Rape by use of drugs | GUILTY | 01/08/2013 | Pled Guilty | 01/08/2013 |

| Count | S/A | Prior | Section Statute | OL | Term Level | Term Imposed | Stay | Parole | Conc/Cons | Case | Count |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 0 | 0 | 261(a)(2) PC | Felony | Low | 3 years | | Y | | | 0 |
| 4 | 0 | 0 | 261(a)(3) PC | Felony | Low | 3 years | | Y | consecutive full term | 11WF0759 | 1 |

**Heard Hearings:**

| Date | Hearing Type - Reason | Courtroom | Hearing Status | Special Hearing Result |
|---|---|---|---|---|
| 04/04/2011 | Arraignment In Custody | W14 | Heard | waives statutory time for |

*See* **Exhibit 1** to Accurate's Request for Judicial Notice ("RJN").

In contrast, the Megan's Law website contains entirely different information from what was included in both the Background Report and the Orange County Superior Court records:

**Offenses**

| | |
|---|---|
| Offense Code: | 261(a)(2) |
| Description: | RAPE BY FORCE OR FEAR |
| Year of Last Conviction: | 2013 |
| Year of Last Release: | 2016 |
| | |
| Offense Code: | 261(a)(3) |
| Description: | RAPE OF A DRUGGED/INTOXICATED VICTIM |
| Year of Last Conviction: | 2013 |
| Year of Last Release: | 2016 |

*See* **Exhibit 2** to RJN.

Notably, the information from the Megan's Law website does not contain any information regarding: the court name, case number, filing date, charge levels, dispositions, or sentencing information. *See id.* Further, the phrasing of the charge descriptions is different on the Megan's Law website when compared to both the Background Report and the Superior Court records. *Compare id.* ("RAPE BY FORCE OR FEAR" and "RAPE OF A DRUGGED/INTOXICATED VICTIM") *with* Ex. A at p. 4 ("RAPE; DURESS; MENACE" and "RAPE BY USE OF DRUGS") *and* Ex. 1 to RJN (same). The Megan's Law website only lists a year for the conviction, while the Background Report and the Superior Court records list the full date with a month, day, and year. *Compare* Ex. 2 to RJN ("2013") *with* Ex. A at p. 4 ("01/08/2013") *and* Ex. 1 to RJN (same). Last, the Megan's Law website contains a "year of release," which is absent from the Superior Court records and the Background Report. *Compare* Ex. 2 to RJN *with* Ex. A at p. 4 *and* Ex. 1 to RJN.

Accordingly, there are no plausible allegations that Accurate obtained or reported any information from the Megan's Law website on the Background Report, such that neither Accurate nor Amazon could have "use[d] information disclosed

pursuant to [Cal. Pen. Code § 290.46]."  Any conclusory allegation to the contrary is not supported by factual allegations; nor is it plausible.  Accordingly, Plaintiff's Megan's Law claim fails in its entirety.  Because there is no way Plaintiff could amend the FAC to cure this deficiency, this claim should be dismissed with prejudice.

> **2.     Megan's Law Only Provides for Potential Liability Against the "User" of the Information.**

Even if Plaintiff could establish that Megan's Law information was used in connection with the Background Report—it was not—the claim against Accurate still fails as a matter of law because the statutory restriction only applies to the "user" of such information.  Here, as the CRA, Accurate is not the prospective employer.  It does not "use" the consumer report for employment purposes.

The relevant section of Megan's Law, California Penal Code § 290.46(j)(2), states: "**use of any information** that is disclosed pursuant to this section for purposes relating to any of the following is prohibited: . . . (E) Employment."  Cal. Pen. Code § 290.46(d)(2)(E) (emphasis added).  California courts have held that CRAs like Accurate do not "use" the information in consumer reports that they prepare for their employer customers and, as a result, no Megan's Law claim is plausible against them. *See McGroarty v. Am. Background Info. Servs.*, No. 08-CV-1360, 2009 WL 980417 (C.D. Cal. Apr. 8, 2009); *Mendoza v. ADP Screening & Selection Servs., Inc.*, 182 Cal. App. 4th 1644, 1657 (Cal. Ct. App. 2010).

For example, in *McGroarty*, the plaintiff authorized the CRA defendant to run a background check in connection with an employment application.  In turn, the plaintiff alleged that the CRA used California's Megan's Law website to determine whether he was a registered sex offender.  No. 08-CV-1360, 2009 WL 980417, at *1.  The plaintiff brought a complaint alleging that the CRA defendant violated Megan's Law by using the website to conduct its background check. *Id.*

While the plaintiff urged the court to hold that access and distribution of information from the Megan's Law website for a commercial purpose constitutes

"use" of the information, the court "decline[d] to make such a finding." *Id*. at 3.  The court instead held: "[m]ere access to and distribution of the information, whether or not for a commercial or non-commercial purpose, are not bases for liability under the statute; the statute does not take into account the intent of the person gaining access to the information from the Megan's Law website, so long as that person does not 'use' the information for an improper purpose." *Id*. at 3-4.  As a result, the court dismissed the claim against the CRA.  *Id.*

Similarly, in *Mendoza*, the plaintiff had consented to a background check for a prospective job.  As in *McGroarty*, the plaintiff alleged that the defendant CRA reported that the plaintiff was a registered sex offender, in violation of Megan's Law. 182 Cal. App. 4th 1644, 1657 (Cal. Ct. App. 2010).  The California Court of Appeal held that there was no liability as to the CRA defendant, explaining there was an important distinction between *use* of Megan's Law information and a CRA defendant's mere *redisclosure* of information.  *Id.* at 1657-58.  Specifically, the court held that reporting information from the sex offender registry did not constitute "use" as contemplated under Megan's Law.  *Id.* at 1657.  The court was explicit:

> [T]he [Megan's Law] statute is not intended to create *liability for damages* **on the part of employment-screening businesses that access, compile and republish information disclosed on the [Megan's Law Website].**
>
> . . .
>
> [T]he statutory liability created by the [Megan's Law] statute **should be limited to employers who 'use' information disclosed on the [Megan's Law Website] as a basis for an employment decision.**

*Id.* (emphasis added).

In addition to case law, the relevant legislative history bolsters this interpretation.  Specifically, in 2004, the California Legislature revised Megan's Law to eliminate a penalty for redisclosure of information.  *McGroarty*, 2009 WL 980417 at *2.  In particular, the Legislature removed a provision in § 290.4, which had previously imposed liability on "[a]ny person who copies, distributes, discloses or

receives" information under Megan's Law, except as authorized by law. *Id.* That same year, the Legislature added § 290.46, requiring the Department of Justice to publish sex offender registrants on the Megan's Law website. *Id.* With these revisions, the Legislature intended "to notify members of the public of the existence and location of sex offenders" and "eliminated liability for access or distribution of the information." *Id.*

Accordingly, the plain language of the statute, the case law, and the legislative history all confirm that disclosing information from the Megan's Law website in the context of preparing a background report does not constitute "use" of the information. It cannot form the basis for liability against a CRA.

### 3. Plaintiff Does Not Plausibly Allege that Accurate Was an Agent of Amazon.

In a last-ditch effort to circumvent the plain text of the statute and the holdings in cases like *Mendoza* and *McGroarty*, Plaintiff makes a handful of conclusory allegations that Accurate acted as an agent and/or fiduciary representative of Amazon. Plaintiff, however, fails to allege any facts that would support an agency relationship under California law. As a result, even if an agency relationship could salvage Plaintiff's claim (it cannot),[3] Plaintiff's allegations of agency are legally insufficient.

In California, the essential characteristics of an agency relationship are: (1) the agent or apparent agent holds power to alter legal relations between the principal and third persons and between the principal and himself; (2) the agent is a fiduciary with respect to matters within the scope of the agency; and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to him. *Akins v. Seterus, Inc.*, No. 16-CV-01656, 2019 WL 4243221 at *4 (E.D. Cal. Sept. 6, 2019);

---

[3] As Accurate discussed above, the Background Report did not include Megan's Law information. That is fatal to Plaintiff's claim, regardless of his allegations as to Accurate's role as an agent for Amazon.

CASE NO.  8:22-CV-01727-FWS-JDE

*see also Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (2007).

The "right to control" is the most important factor. *Van't Rood v. Cty. of Santa Clara*, 113 Cal. App. 4th 549, 572 (Cal. Ct. App. 2003) ("In the absence of the essential characteristic of the right of control, there is no true agency"). Moreover, "[t]he fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other," and '[c]ontrol may not be inferred merely from the fact that one person's act benefits another." *Id.* To determine whether an entity is in an agency relationship with a principal, courts consider ten factors: (1) control exerted by purported principal; (2) whether the purported agent is engaged in a distinct occupation; (3) whether the work is normally done under the supervision of an employer; (4) the skill required; (5) whether the purported principal supplies tools and instrumentalities and the place of work; (6) the length of time employed; (7) whether payment is by time or by the job; (8) whether the work is in the regular business of the purported principal; (9) the subjective intent of the parties; and (10) whether the purported principal is or is not in business. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (applying California law).

Plaintiff fails to allege *any* of the elements necessary under California law to establish an agency relationship supporting vicarious liability as to Accurate. The only factual support he includes is that Accurate emailed him a pre- and post-adverse action notice on behalf of Amazon. (FAC, Dkt. No. 20 at ¶¶ 25, 27 [Accurate, "as an agent and at the direction of Amazon, emailed Plaintiff a pre-adverse action notice" and "a post-adverse action notice"]). The fact that Accurate may have sent notices on behalf of Amazon, coupled with the other conclusory statements of agency, is insufficient to support a claim that Accurate acted as an agent of Amazon.

**B.    Plaintiff's ICRAA Claim Must Be Dismissed.**

Plaintiff claims Accurate violated § 1786.18(a)(7) of the ICRAA. He bases this claim on the theory that Accurate could not report his felony conviction because

the date of his conviction antedated the screening report by more than seven years. (*Id.* at ¶ 26.)  Plaintiff's ICRAA claim fails for two independent reasons.  First, the ICRAA allows a CRA to report convictions for seven years from the later of multiple potential dates, including the date of release from prison, which was the case with respect to Plaintiff.  Second, the ICRAA claim is preempted by the FCRA.

### 1. Plaintiff's Conviction Was Reportable Under the ICRAA Because He Was Released from Prison Within Seven Years of the Date of the Background Report.

The relevant section of the ICRAA, Cal. Civ. Code § 1786.18(a)(7), prohibits the reporting of "[r]ecords of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, **release**, or parole, antedate the report by more than seven years."  Cal. Civ. Code § 1786.18(a)(7) (emphasis added).

Here, Plaintiff was released from prison in May 2016 and Accurate generated the Background Report in March 2022.  (Compl., Dkt. No. 1 at ¶ 12; FAC, Dkt. No. 20 at ¶ 24.)  Accordingly, the date of his "release" was less than seven years before the date the Background Report was prepared, meaning the criminal history was reportable under the ICRAA.  Cal. Civ. Code § 1786.18(a)(7).

To the extent Plaintiff intends to read the ICRAA to prohibit any reporting beyond seven years from the disposition date, i.e., the conviction date, that position is legally and practically untenable.

To start, the plain text of the statute makes clear that "release" is one of three alternative measuring points for the seven-year reporting period—the others being "disposition" and "parole."  This is evidenced by the statute's use of three separate and alternative terms that trigger the seven-year period, which logically implicates different points in time associated with the completion of various aspects of a criminal offender's sentence: (1) "disposition" refers to the date of the conviction; (2) "release" refers to the date that an inmate is released from incarceration; and

(3) "parole" means the date that the period of conditional and supervised release terminates.  These three points in time refer to various stages in the criminal justice process.   First, a person may be convicted of a crime, but not sentenced to confinement.  In these instances, the disposition date of the conviction would control.  Second, in certain instances where a person serves prison time, that person will not be placed on parole upon release.   In these instances, the release date from confinement would apply.  Third, in certain circumstances, a person may be released from confinement, but subject to a period of parole.  In these circumstances, the conviction would be reportable for seven years following a person's completion and discharge of the parole period.

Next, an interpretation that only gives meaning to the term "disposition" would be inconsistent with well-established canons of statutory interpretation.  For example, it would be surplusage for the legislature to have included three ***alternative*** terms in the statute that were meant to refer to the same point in time. *See Santos v. Crenshaw Mfg., Inc.*, 55 Cal.App.5th 39 (Cal. Ct. App. 2020) ("In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose").  And, it is a basic tenet of statutory interpretation that courts will not "interpret away clear language in favor of an ambiguity that does not exist." *See*, *e.g.*, *People v. Coronado*, 12 Cal.4th 145, 151 (Cal. 1995).

Finally, Accurate's interpretation is bolstered by practical realities.  Notably, if only a conviction date could be used, a CRA could be barred from reporting criminal information regarding an applicant who was *still incarcerated*.  This would be the case, for example, in circumstances where an offender was currently incarcerated and serving a prison term of more than seven years and where the offender applied for a job after the first seven years of the sentence had passed.  An interpretation of the ICRAA that would preclude a CRA from reporting (and an employer considering) a criminal record where the offender is currently incarcerated

would be nonsensical.  This is especially true in an era where anyone could submit online employment applications, even if he or she is still confined.

For all of these reasons, Accurate did not violate the ICRAA as a matter of law.  Plaintiff's criminal history was still reportable based on the date he was released from prison.  And because there is no way Plaintiff could amend this cause of action to state a viable claim, the Court should dismiss the ICRAA claim with prejudice.

### 2.     Plaintiff's ICRAA Claim Should Be Dismissed Because It Is Preempted by § 1681t of the FCRA.

Alternatively, the Court should dismiss Plaintiff's ICRAA claim because it is expressly preempted by the FCRA.[4]  *See, e.g.*, *Roberts v. United Healthcare Services, Inc.*, 2 Cal.App.5th 132, 143 (Cal Ct. App. 2016) (holding that state-law based claims were expressly preempted by federal law).  The California Supreme Court has provided the following guidance when analyzing an express preemption argument:

> [T]he court's task is to 'identify the domain expressly pre-empted. […] To do so, we focus first on the statutory language, which necessarily contains the best evidence of Congress' pre-emptive intent.  […] Indeed, in all preemption cases, whether express or implied preemption is claimed, the fundamental question regarding the scope of preemption is one of congressional intent.

*Friends of the Eel River v. North Coast Railroad Authority*, 3 Cal.5th 677, 704 (Cal. 2017).

As is relevant here, the FCRA includes an express preemption provision related to the content of consumer reports, which is located at 15 U.S.C. § 1681t(b).  Under this provision, "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681c [of the FCRA], relating to information contained in consumer reports."  15 U.S.C. § 1681t(b)(1)(E).  In effect, this preemption provision prevents state laws

---

[4] The Court need not reach the issue of preemption because Plaintiff's release was within seven years of the report.  Preemption, however, serves as an independent basis for dismissal.

CASE NO.  8:22-CV-01727-FWS-JDE

from imposing certain "requirement[s] or prohibition[s]" affecting the content of consumer reports, their issuers, and their users.  (15 U.S.C. § 1681t(b); Omnibus Consolidated Appropriations Act, 1997, 1996 Enacted H.R. 3610, 104 Enacted H.R. 3610, 110 Stat. 3009, 3009x452-3009x454; *Aldaco v. RentGrow, Inc.* (7th Cir. 2019) 921 F.3d 685, 688; *Simon v. DIRECTV, Inc.* (D. Colo. Mar. 19, 2010) No. 09-CV-00852, 2010 WL 1452853, at *3-4.)

As this express preemption provision makes clear, state laws cannot impose requirements or prohibitions with respect to any subject matter regulated under § 1681c of the FCRA relating to information contained in consumer reports.  15 U.S.C. § 1681t(b)(1)(E).[5]  In turn, § 1681c specifically regulates the *same exact subject matter* at issue in Cal. Civ. Code § 1786.18(a)(7).  For example, the chart below shows the statutory language of each provision side-by-side, with respect to the reporting of criminal convictions.

| Statute | Relevant Text |
| --- | --- |
| FCRA: 15 U.S.C. § 1681c(a)(5) | "[N]o consumer reporting agency may make any consumer report containing any of the following items of information . . . (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." |
| ICRAA: Cal. Civ. Code § 1786.18(a)(7) | "[A]n investigative consumer reporting agency may not make or furnish any investigative consumer report containing any of the following items of information . . . (7) Records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, |

_____

[5] In addition, although Accurate does not raise it at this time, the FCRA also contains a general conflict preemption provision at 15 U.S.C. § 1681t(a), which explains that the FCRA preempts state laws "to the extent that those laws are inconsistent with any provision of [the FCRA]."

CASE NO.  8:22-CV-01727-FWS-JDE

| | release, or parole, antedate the report by more than seven years." |
|---|---|

As the above chart shows, both provisions address the length of time for which a CRA may report convictions of crimes.  Importantly, though, section 1681c of the FCRA does not contain any restriction on how long criminal *convictions* can be reported, as compared to records of arrest and other adverse items of information.  15 U.S.C. § 1681c(a)(2), (5), (7).  Accordingly, in the FCRA, Congress made an informed judgment as to how long convictions of crimes can be reported – and included an express preemption provision for state laws attempting to operate in that sphere.  *See*, *e.g.*, *Simon*, 2010 WL 1452853, at *3-4 (holding that provisions of the Colorado Consumer Credit Reporting Act were preempted under sections 1681t(b)(1)(E) and 1681(c)(a)(5), where the statutory provisions at issue concerned the same subject matter, i.e. the disclosure of criminal arrests and convictions in consumer reports); *see also Consumer Data Indus. Ass'n v. Frey*, 495 F.Supp.3d 10, 19-21 (D. Me. 2020) (holding that amendments to Maine's Fair Credit Reporting Act were preempted under sections 1681t(b)(1)(E) and 1681(c)).

It is important to note that the FCRA preemption provision contains an exception, but the exception is inapplicable to the ICRAA claim here.  In particular, the preemption provision discussed above does "not apply to any State law **in effect** on September 30, 1996." 15 U.S.C. § 1681t(b)(1)(E) (emphasis added).  Although the provision of the ICRAA at issue in the FAC was on the books in 1996, it was not in effect in its present form.  Indeed, it is undisputed that Plaintiff could not have brought his claim against Accurate under § 1786.18(a)(7) of the ICRAA in 1996.

Specifically, as of September 30, 1996, the ICRAA only applied to reports prepared with information obtained through personal interviews. *First Student Cases*, 5 Cal. 5th 1026, 1033 (Cal. 2018).  Plaintiff does not claim in the FAC, nor could he, that the Background Report included information obtained through personal

interviews. Accordingly, in 1996, the ICRAA would have been inapplicable to the report at issue in this case. In 1998, however, the California Legislature amended the ICRAA to eliminate the "personal interview limitation." In doing so, it drastically expanded the statute's scope to include character information "obtained through any means." *Id.* at 1033-34.

Thereafter, the law was deemed to be unconstitutionally vague, until August 2018, when the California Supreme Court issued the *First Student* decision. *Id.* at 1038. The *First Student* decision confirmed for the first time that the ICRAA was amended to expand its application to all consumer reports as defined under the FCRA at 15 U.S.C. § 1681a(d)(1),[6] including consumer reports issued for employment purposes, and thus, for the first time, imposed its requirements and prohibitions upon all consumer reports covered by the FCRA. *First Student Supra.*, at 1033-34.[7]

Based on the ICRAA's 1998 expansion, and subsequent court interpretations, the version of the ICRAA that Plaintiff bases his claim upon was not "in effect on September 30, 1996." *See* 15 U.S.C. § 1681t(b)(1)(E). In other words, because Cal. Civ. Code § 1786 was amended in 1998 – after September 30, 1996 – to expressly impose different requirements and reach entirely different reports, it is preempted as a matter of law by the FCRA, § 1681t(b). The Court should dismiss Plaintiff's ICRAA claim on this basis as well.

---

[6] The term "consumer report" means any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 604. 15 USC § 1681a(d)(1).

[7] The *First Student* decision did not address the interplay between the ICRAA and the FCRA's preemption provision. *See id.*, generally.

CASE NO.  8:22-CV-01727-FWS-JDE

**C.**    **Plaintiff's FCRA Claim Fails Because It Does Not Allege Facts Supporting Required Elements and Because It Is Entirely Predicated on the Alleged Megan's Law Violation.**

In Count Four, Plaintiff alleges one claim under § 1681b(b)(1) of the FCRA. This provision states that a CRA may only furnish a consumer report for employment purposes if the "user" of the report makes certain certifications to the CRA regarding compliance with federal and state law. 15 U.S.C. § 1681b(b)(1). This claim fails for two independent reasons: (1) Plaintiff makes no allegations whatsoever about the lack of certifications between Accurate and Amazon; and (2) the claim is predicated on a violation of Megan's law which, as discussed above, did not occur.

First, § 1681b(b)(1) deals with certifications between a CRA and an entity that uses a report. The FAC, however, has no allegations regarding whether Amazon provided the requisite certifications to Accurate. (*See* FAC, Dkt. No. 20, generally.) This alone means that Plaintiff's § 1681b(b)(1) claim fails as a matter of law, given that a claim under this section requires facts regarding the lack of proper certifications. *See* 15 U.S.C. § 1681b(b)(1); *Juster v. Workday, Inc.*, No. 21-CV-07555, 2022 WL 3030530, at *12 (N.D. Cal. Aug. 1, 2022) (granting CRA's motion to dismiss 1681b(b)(1) claim where there were no allegations that the CRA did not satisfy its obligation to get the required certification and, instead, where plaintiff relied on allegations that the CRA assisted its employer customers in violating other state law); *Marchioli v. Pre-employ.com, Inc.*, No. 16-CV-2305, 2017 WL 7049527, at *12 (C.D. Cal. June 30, 2017) (explaining that § 1681b(b)(1) "requires certification from a user of a consumer report . . . that the user has made the required disclosures to the consumer that a consumer report may be obtained for employment purposes and that the user has obtained prior written authorization from the consumer to procure the report").

Second, Plaintiff alleges that Accurate had knowledge of Amazon's alleged violation of state law, or that as an agent of Amazon, Accurate itself violated state

law.  (*Id.* at ¶ 73.)  These claims are entirely predicated on the alleged violations of Megan's Law.  (*Id.*)  Because the underlying Megan's Law claim fails as a matter of law, as discussed above, so too must the FCRA claim.

Indeed, when interpreting the FCRA, courts repeatedly hold that a plaintiff cannot premise a claim on the alleged failure to follow a procedure if the plaintiff cannot also show that the outcome the procedure was designed to prevent actually occurred.  For example, in an analogous context, § 1681e(a) requires a CRA to maintain reasonable procedures designed to avoid providing a consumer report for an impermissible purpose.  *See* 15 U.S.C. § 1681e(a).  And courts consistently hold that a plaintiff cannot state a claim for a failure to maintain those procedures if the plaintiff cannot also show the CRA provided a report for an impermissible purpose. *See, e.g.*, *Abbink v. Experian Info. Sols., Inc.*, No. 19-CV-1257, 2019 WL 6838705 (C.D. Cal. Sept. 20, 2019) (dismissing § 1681e claim and stating that because "[p]laintiff failed to demonstrate that Experian released his consumer report in violation of Section 1681b(b), Plaintiff cannot bring a claim based on Experian's violation of the "reasonable procedures requirement of Section 1681e"), *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263 (5th Cir. 2000) ("Accordingly, a plaintiff bringing a claim that a reporting agency violated the "reasonable procedures" requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b").  The same logic holds true here.  Because Plaintiff cannot show an underlying violation of Megan's Law, he cannot state a claim premised on the alleged lack of a certification regarding compliance with Megan's Law.

### D.  Plaintiff's UCL Claim Fails Because It Is Predicated on the Other Deficient Statutory Claims and Because Plaintiff Lacks Standing.

Plaintiff alleges one final tag-along claim pursuant to the UCL.  Specifically, Plaintiff alleges that Accurate violated the UCL, which prohibits "any unlawful, unfair or fraudulent business act or practice." (*Id.* at ¶ 77.)  Plaintiff's UCL claim is based only on his other statutory claims regarding Accurate's alleged reporting of

information from the Megan's Law website, the inclusion of allegedly obsolete conviction information, and the certifications regarding lawful use of consumer reports. (*Id.* ¶ 78.)  As discussed at length in this Motion, each of those statutory claims fail.  Accordingly, because each of the predicate claims against Accurate fails, so too must Plaintiff's UCL claim. *See Estrada v. Kaiser Foundation Hospitals*, 678 Fed.Appx. 494, 497 (9th Cir. 2017) ("Given that the sections 222 and 226 claims are preempted,  the derivative UCL claim  also  fails"); *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc*., 28 Cal. App. 5th 923, 950 (Cal. Ct. App. 2018) ("when the underlying legal claim fails, so too will a derivative UCL claim"); *see also Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (Cal. Ct. App. 2012) (same).

Plaintiff also lacks standing to pursue his UCL claim because he has not alleged that he can recover restitution or injunctive relief from Accurate.  The remedies available to private litigants under the UCL are limited to restitution and injunctive relief. *See In re Tobacco Cases II*, 240 Cal.App.4th 779, 790 (Cal. Ct. App. 2015) ("Injunctions are the primary form of relief available under the UCL to protect consumers from unfair business practices, while restitution is a type of ancillary relief").   As discussed below, Plaintiff is not entitled to either of these remedies and, therefore, lacks standing to bring a UCL claim. *See Walker v. USAA Cas. Ins. Co.*, 474 F.Supp.2d 1168, 1172 (E.D. Cal. 2007) ("to maintain a claim under the UCL, Plaintiff must show that he has 'suffered injury in fact and has lost money or property as a result of unfair competition.'").

First, Plaintiff has no right to restitution because he does not allege that he paid money or property to Accurate, for which he is entitled reimbursement. (*See* FAC, Dkt. No. 20, generally); *see also People ex rel. Harris v. Aguayo*, 11 Cal.App.5th 1150, 1169 (Cal. Ct. App. 2017) (restitution allows a plaintiff to "recover money or property in which he or she has a vested interest"); *People ex rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal.App.4th 102, 134 (Cal. Ct. App. 2003) ("In a suit for violation of the unfair competition law, 'orders for restitution' are those

'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken'") (internal citations omitted).

Second, although injunctive relief can be available in certain contexts under the UCL, it is not available to Plaintiff here because the FAC fails to allege facts stating that there is a reasonable probability that past wrongful acts will recur. *See Cisneros v. U.D. Registry, Inc.*, 39 Cal.App.4th 548, 574 (Cal. Ct. App. 1995); *see also People v. Toomey*, 157 Cal.App.3d 1, 20 (Cal Ct. App. 1985). In this case, a "recurrence" is not possible because, as explained above, the FAC fails to allege that Accurate engaged in any wrongful acts in the first place. With no remedies under the UCL available, Plaintiff lacks standing to bring such a claim.

## V.    CONCLUSION

For the foregoing reasons, Defendant Accurate Background, LLC, respectfully requests that the Court grant its Motion to Dismiss, with prejudice.

Dated:  December 15, 2022            TROUTMAN PEPPER HAMILTON
                                     SANDERS LLP


                                     By: */s/ Jessica Lohr*
                                     Jessica Lohr
                                     Ronald I. Raether

                                     Attorney for Defendant
                                     ACCURATE BACKGROUND, LLC